IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| | : | No. 25-362 |
| JOSEPH REID | | |

**MEMORANDUM**

**SCHMEHL, J.**                                                                                    **SEPTEMBER 22nd, 2025**

      Defendant was indicted on two counts of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). Following a bail status hearing on August 25, 2025, United States Magistrate Judge Jose R. Arteaga denied the government's motion for detention and released the Defendant on $50,000 OR bond with many conditions, including home detention at 133 Arlington Avenue, Jersey City, New Jersey as well as electronic monitoring at that same address. The Defendant was also ordered to surrender his passport and to restrict his travel for employment, education, religious and medical needs to the Eastern District of Pennsylvania and District of New Jersey. No restrictions were placed on Defendant's access to computers, internet or telephone. By Order dated August 26, 2025, the Court granted the government's motion to stay Magistrate Arteaga's Order releasing Defendant, pending a bail revocation hearing. Presently before the Court is the government's amended motion for detention and the Defendant's motion for release from custody. The Court held a *de novo* revocation of bail hearing on the two motions on September 15, 2025. At the hearing, neither side presented any witnesses nor

1

evidence and instead relied solely on argument. For the reasons that follow, the government's motion is granted and the Defendant's motion is denied.

The charges in this case stem from a drug trafficking investigation conducted by the Drug Enforcement Administration ("DEA"), during which investigators completed two separate controlled purchases of one pound of methamphetamine from the Defendant in exchange for cash. Afterwards, a United States Magistrate Judge in the District of New Jersey authorized a tracking device to be installed on a vehicle belonging to Defendant's fiancée. Investigators next arranged for a controlled purchase of more methamphetamine to be delivered from the Defendant, and on May 21, 2025, the Defendant was stopped by Pennsylvania State Police as he drove from New Jersey to Bethlehem, Pennsylvania to meet with a confidential source. The Defendant did not consent to a search of his vehicle, leading investigators to obtain a search warrant. A subsequent search of the vehicle revealed that Defendant was transporting 16 pounds of methamphetamine for distribution.

If probable causes exists that the defendant has committed an offense under the Controlled Substances Act for which the maximum penalty is more than ten years' imprisonment, the Bail Reform Act creates a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person ... and the safety of any other person and the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (per curiam) (quoting 18 U.S.C. § 3142(e)). To rebut the presumption, "the defendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *Carbone*, 793 F.2d at 560.

After conducting a *de novo* review of the record, the Court concludes that Defendant has rebutted the presumption that he is a risk of flight but failed to rebut the presumption that he is a danger to the community and must be detained. *See United States v. Perry*, 788 F.2d 100, 118 (3d Cir. 1986).

With respect to risk of flight, the Court notes that Defendant had an opportunity to flee when he was informed that he was under investigation by the federal government. Defendant also voluntarily surrendered to authorities immediately after he was charged. He has familial ties to this area as his fiancée lives in Jersey City, New Jersey and he has an aunt and cousin who live in Easton, Pennsylvania.

With respect to danger to the community, however, the Defendant was charged with possession and distribution of a staggering amount of methamphetamine. To put this amount in perspective, the government highlighted during the oral argument that the amount of methamphetamine possessed by the Defendant was enough to supply approximately 16,000 individuals with a single dose.

Also concerning to the Court is that there is no evidence that Defendant has been gainfully employed or has ever paid taxes on any income. He claims that he has been selling cars for one year but has not submitted any verification. Although Defendant and his fiancée are in the process of filing the appropriate business paperwork and tax documents for a new virtual business called J & L Auto Boutique, LLC, the government proffered that this filing was not made until August 6, 2025, **after** he was aware he was under federal investigation. In addition, Defendant could not cite any income he received from selling cars or from any other means. He apparently has no financial assets. Yet, his fiancée informed Pretrial Services states that she receives approximately $2,000 from Defendant per month. The Court simply cannot conclude

3

from these facts that Defendant has a legitimate source of income. *See United States v. Hammond*, Cr. No. 16-121, 2016 WL 7384175, at *3 (W.D. Pa. Dec. 21, 2016). Given the staggering amount of drugs Defendant is charged with possessing and distributing, the lack of a record of any stable employment, and that Defendant is a registered sex offender (albeit as the result of a rape that occurred when Defendant was 14 years old) in the State of New York, the Court finds that he has not met his burden in rebutting the presumption of detention based on danger to the community and thus the presumption applies in this case. *See Perry*, 788 F.2d at 118.

Although Defendant should be detained pursuant to the presumption found in 18 U.S.C. § 3142(e)(3)(A), he would also be detained pursuant to 18 U.S.C. § 3142(e)(1) as "no condition or combination of conditions will reasonably assure the safety" of others if he was released. 18 U.S.C. § 3142(e)(1); *see United States v. Thomas*, 2016 WL 890583, at *6 (W.D. Pa. Mar. 9, 2016).

The burden of persuasion remains with the government and the government must demonstrate by a preponderance of the evidence that the defendant is a flight risk or show by clear and convincing evidence that he is a danger to others. 18 U.S.C. § 3142(f); *see United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986); *United States v. Charga*, 850 F. Supp. 354, 357 (W.D. Pa. 1994). In evaluating if the Government has met its burden, courts conduct an individualized assessment and weigh the evidence in light of the four factors set forth in 18 U.S.C. § 3142(g), i.e.:

> (1) the nature and circumstances of the offense charged [...];
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); see *Thomas*, 2016 WL 890583, at *6. The Court now discusses each of the § 3142(g) factors, in turn.

First, the nature and circumstances of the offenses weigh in favor of Defendant's detention as the instant offenses are extremely serious. In creating the Bail Reform Act, Congress considered drug transactions carrying a maximum penalty of at least ten years serious enough to justify imposing an evidentiary burden on defendants to secure their release. *See Strong*, 775 F.2d at 507. If convicted of the instant offenses, Defendant faces a mandatory minimum of ten years' incarceration and up to life imprisonment. *See* 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A)(ii); 846. The Government proffers that Defendant possessed a total of 18 pounds of methamphetamine for distribution. Altogether, the serious nature and circumstances of the offenses weigh in favor of his detention.

Second, while Defendant is presumed innocent of the instant offenses, it appears that the weight of the evidence against him is strong. *See* 18 U.S.C. § 3142(g)(2). To that end, Defendant was recorded by body camera and aerial surveillance selling one pound of methamphetamine to a confidential source on two separate occasions. On

5

another occasion, 16 pounds of methamphetamine were discovered in his vehicle. The evidence against him is direct evidence of his involvement in drug trafficking, including the seizure of a substantial quantity of methamphetamine. Defendant has otherwise not previewed any defenses to the charges at this point. Therefore, the Court finds that this factor overwhelmingly favors detention.

       Third, the evidence of Defendant's history and characteristics, the factor most favorable to his request, also supports his detention. *See* 18 U.S.C. § 3142(g)(3)(A). Defendant was born and raised in Brooklyn, New York. Although he has not lived there for several years, he still maintains a Brooklyn, N.Y. driver's license. He currently lives with his fiancée at the Jersey City address although he claims to have also lived in Easton, Pa. for the past seven years. It is a fact that Defendant does have a criminal conviction for forcible rape that he committed when he was 14 years old. He was sentenced as an adult and received a significant sentence of 40 months to 10 years. As a result, he is a registered sex offender in the State of New York. He also committed at least three parole violations after his release. To his credit, Defendant, who is now 41 years old, has had no further run-ins with the law until the time of his arrest in this matter. The Court again notes that Defendant did not flee despite knowing he was under federal investigation and that he also self-surrendered to authorities as soon as he was charged. On the other hand, Defendant is now aware that he faces a statutory mandatory minimum sentence of 10 years with a maximum sentence of life. He reported no significant mental health issues or substance abuse. He also reported no serious physical health issues, but he does experience asthma attacks for which he uses an inhaler as needed. After considering Defendant's history and characteristics, the Court concludes that this factor only slightly supports his detention.

Fourth, and most significant, Defendant's release poses a danger to the community. Although Defendant contends that a non-violent drug trafficking offense is not dangerous, the Court finds this argument misplaced. *See United States v. Gibson*, 481 F.Supp.2d 419, 423 (W.D. Pa. 2007). ("[V]iolence is not the only danger to the community this court must consider. The Court must also consider the danger of trafficking in illicit drugs."). As this Court has noted, "[m]ethamphetamines as a class of drug are particularly dangerous, because they are stimulants, not sedatives, and can induce paranoia, hallucinations, and violent behavior." *United States v. Robinson*, 466 F. Supp. 3d 524, 531 (E.D. Pa. 2020). Defendant engaged in a sophisticated drug trafficking operation, which this Court and Congress believe is a significant danger to the community. *See United States v. Cruse*, No. 13-157, 2018 WL 5281679, at *4 (W.D. Pa. Oct. 24, 2024) (Congress considers the seriousness of the offense when requiring mandatory minimum sentences). Illegal drugs such as methamphetamine are the scourge of our society. Further, Defendant has been charged by Indictment with potentially poisoning the communities of the Lehigh Valley with a whopping 18 pounds of methamphetamine. Distribution of illegal drugs can have devastating effects on a community, including loss of life, loss of jobs and loss of the family as a social unit.

The drug quantity and the possibility of future deliveries highlights the prowess of Defendant's drug trafficking operations. Even if the Court were to place Defendant on home confinement with electronic monitoring, the Defendant could still run his drug business from his home, especially since there is no evidence that Defendant's supplier has been arrested or moved away. Given the dangerous and continuing nature of Defendant's alleged drug trafficking, this factor also weighs heavily in favor of his detention.

For the foregoing reasons, the Court will grant the government's motion for pretrial detention, vacate Magistrate Judge Arteaga's Order granting bail and deny the Defendant's motion for release from custody. The Defendant shall be detained pending trial.